[Docket No. 19]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| TRAVIS WOOLERY | |
| Plaintiff | Civil No. 19-16465 (RMB/JS) |
| v. | |
| | **OPINION** |
| ATLANTIC CAPES FISHERIES, INC. | |
| Defendant | |

**APPEARANCES:**

MCCANN & WALL, LLC
By: Mark Jaffe, Esq.
13 Wilkins Avenue
Haddonfield, NJ 08033
    Counsel for Plaintiff Travis Woolery

LATTI & ANDERSON LLP
By: Jonathan E. Gilzean, Esq.
30-31 Union Wharf
Boston, MA 02109
    Counsel for Plaintiff Travis Woolery

REEVES MCEWING, LLP
By: Brian McEwing, Esq.
10 Andrews Lane, P.O. Box 599
Dorchester, NJ 08316
    Counsel for Defendant Atlantic Capes Fisheries, Inc.

**BUMB**, District Judge:

    THIS MATTER comes before the Court upon Defendant Atantic Capes Fisheries, Inc.'s ("Defendant" or "Atlantic Capes") Motion to Dismiss or for Summary Judgment ("Motion") [Dkt. No. 19] of

the claims in Plaintiff Travis Woolery's ("Plaintiff" or "Woolery") Amended Complaint [Dkt. No. 12]. For the reasons set forth below, Defendant's Motion will be **DENIED**.

I. <u>BACKGROUND</u>

In his Amended Complaint, Plaintiff Travis Woolery claims that he was injured while working on the fishing boat F/V ALLIANCE. Based on his injury, Plaintiff has asserted claims against Defendant Atlantic Capes Fisheries, Inc. for: negligence, both under the Jones Act (Count I) and general maritime law (Count IV); unseaworthiness (Count II); and maintenance and cure (Count III).

Atlantic Capes has moved to dismiss Plaintiff's claims, or else to seek summary judgment on his claims, based on its contention that Plaintiff was not working as a seaman when he was injured. The parties' submissions in support of and in opposition to Defendant's Motion provide additional information regarding the nature of Plaintiff's employment, the Defendant's ownership of the F/V ALLIANCE, and other matters.[1]

---

[1] Because Defendant's Motion is supported by documents and other submission well outside the allegations contained in Plaintiff's Amended Complaint, Defendant's Motion can only be construed as one for summary judgment under Fed. R. Civ. P. 56. See <u>S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp, Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999) (explaining that a Court in reviewing a Rule 12(b)(6) motion must consider only the facts alleged in the pleadings, the documents attached hereto as exhibits, and matters of judicial notice); Fed. R. Civ. P. 12(b) (providing that if any matters outside the pleadings are presented to the

2

## II. **LEGAL STANDARD**

The Court has subject matter jurisdiction pursuant to the Merchant Marine Act of 1920 (the "Jones Act"), 46 U.S.C. § 30104 et seq., 28 U.S.C. § 1331, and 28 U.S.C. § 1333.

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  In considering a motion for summary judgment, the district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and

---

Court, and the Court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56).

3

all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### III. **ANALYSIS**

#### A. Plaintiff's "Seaman" Status (Counts I/II/III)

The parties agree that Plaintiff is only entitled to relief on Counts I through III if he is found to be a "seaman", as only a seaman can claim damages under the Jones Act, or for unseaworthiness or maintenance and cure. 46 U.S.C. § 30104; [CASES]. But the Supreme Court tells us that the term "'seaman' is a maritime term of art." McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 342 (1991).

The Court enunciated its test for determining whether an employee qualifies for seaman status in <u>Chandris, Inc. v. Latsis</u>, 515 U.S. 347 (1995).  The operative test has two prongs.

First, the "employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission. <u>Chandris</u>, 515 U.S. at 368 (quoting <u>Wilander</u>, 498 U.S. at 355). This prong reserves seaman status for "employees who do the ship's work," a threshold which is "very broad." <u>Chandris</u>, 515 U.S. at 368.

Second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." <u>Id.</u> at 368.  The purpose of this "substantial connection" prong is to separate seamen eligible for Jones Act protection "from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." <u>Id.</u> at 368.  This is consistent with the Jones Act's intended purpose, namely "to protect sea-based maritime workers, who owe their allegiance to a vessel". <u>Id.</u> at 376.

"[T]he question of who is a 'member of the crew,' and therefore who is a 'seaman,' is a mixed question of law and fact." <u>Id.</u> at 369.  "[T]he inquiry into seaman status is **of necessity fact specific**; it will depend on the nature of the

5

vessel and the employee's precise relation to it." Id. at 371 (quoting Willander, 498 U.S. at 356) (emphasis added). "[I]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury." Id. (quoting Willander, 498 U.S. at 356).

Additionally, "the underlying inquiry of whether a vessel is or is not "in navigation" for Jones Act purposes is a fact-intensive question that is normally for the jury and not the court to decide." Id. at 373. "Removing the issue from the jury's consideration is only appropriate where the facts and the law will reasonably support only one conclusion". Id. (citing Anderson v. Liberty Lobby, 477 U.S. 242, 250-51 (1986)). Such a situation is one "where **undisputed facts** reveal that a maritime worker has a **clearly inadequate** temporal connection to vessels in navigation". Id. at 371 (emphasis added).

Defendant asserts that Plaintiff has failed to plead facts sufficient to support his assertion of seaman status. The Court examines the parties' arguments regarding each prong in turn.

1. First Prong: "Doing the Ship's Work"

As to the first prong, whether Plaintiff "did the ship's work" by contributing to the function of the vessel and its accomplishment of its mission:

6

Defendant argues that Plaintiff's duties as a welder assisting in the conversion of the F/V ALLIANCE from a shrimping vessel to a scallop fishing vessel did not contribute to the ship's function or mission.  Plaintiff counters that his work welding and installing scallop fishing equipment did, in fact, contribute to the vessel's new mission as a scallop fishing vessel.  Plaintiff also asserts that during that time he performed other functions associated with a seaman, such as maintaining the vessel by "checking the bilge pumps and tightening lines", and protecting the vessel and its equipment by serving as "de facto night watchman". (Plaintiff's Opposition at 15-16.)

A genuine dispute clearly exists regarding the nature and extent of Plaintiff's duties in connection with the F/V ALLIANCE.  This is an issue of material fact, because establishing the nature and extent of Plaintiff's duties will serve to establish or eliminate his seaman status, and thus his ability to bring the claims in Counts I through III.  Viewed in the light most favorable to the Plaintiff, the finder of fact could draw the reasonable inference that Plaintiff's duties consisted of "doing the ship's work" and thus contributed to the accomplishment of its mission.

2. Second Prong: Substantial Connection to Vessel "In Navigation"

As to the second prong, whether Plaintiff had a substantial connection to a vessel "in navigation":

Defendant contends that the F/V ALLIANCE was no longer "in navigation" from the time of its arrival in Cape May, New Jersey for conversion. Plaintiff responds that undergoing repairs is not automatically an indicator that a vessel is no longer "in navigation", and that determining if and when the F/V ALLIANCE shifted out of "in navigation" status is a "fact[-]intensive inquiry" involving disputed facts to be left to the jury.

Plaintiff's position is supported by Chandris, our touchstone on this issue. A vessel remains a vessel "even when [it] is undergoing repairs." Chandris, 515 U.S. at 374. But "at some point . . . repairs become sufficiently significant that the vessel can no longer be considered in navigation." Id. The question of whether that threshold has been crossed is a question of fact for a jury. Roper v. United States, 368 U.S. 20, 22-23 (1961). Relevant considerations include "the status of the ship, the pattern of the repairs, and the extensive nature of the work contracted to be done." Chandris, 515 U.S. at 374 (quoting West v. United States, 361 U.S. 118, 122 (1959)); see also Roper, 368 U.S. at 22-23.

Here, Plaintiff's injury allegedly occurred in October 2017, approximately four months after the F/V ALLIANCE's arrival in Cape May in June 2017 for conversion. In Chandris, the work on the vessel in question "took only about six months", which the Court termed "a relatively short period of time for important repairs" that did not take the vessel out of navigation. Chandris, 515 U.S. at 374. Yet the inquiry required by West means the Court must consider the overall project as well. Defendant asserts that almost three years later the ship remains out of service, although it is unclear whether such a lengthy stay was contemplated at the time, or is the result of subsequent developments. Plaintiff notes that he left Defendant's employ, and the vessel, in August 2018, and that his knowledge regarding the vessel's operations and working condition since that time is limited as a result. Despite that qualification, Plaintiff argues that a jury could reasonably conclude that the repairs were not so significant as to take the vessel out of navigation, both a) because of the limited temporal extent of repairs (i.e., four months) prior to his injury and b) because the F/V ALLIANCE remained fully operational, sufficient for Plaintiff to work and reside on it during its time in port.

A genuine dispute clearly exists regarding the conversion of the F/V ALLIANCE – its timeline, both planned and actual, the

9

significance of the repairs made, and the extent to which the vessel was still operational at the time of Plaintiff's alleged injury.  This is an issue of material fact, again, because establishing whether the vessel was "in navigation" will serve to establish or eliminate his seaman status, and thus his ability to bring the claims in Counts I through III.  Viewed in the light most favorable to the Plaintiff, the finder of fact could draw the reasonable inference that the vessel remained "in navigation" at the time of the alleged injury.

Defendant also contends that Plaintiff lacked a "substantial connection" to the F/V ALLIANCE.  Defendant specifically points to the test in Chandris, where an employee who spends 30 percent or less of his time in service of a vessel in navigation should not qualify as a seaman. Chandris, 515 U.S. at 371.  Defendant's argument on this point largely ties in to its assertion that the F/V ALLIANCE was not "in navigation" and thus would turn on that finding.  Defendant also provides employment records listing Plaintiff as a 40 hour per week employee, and asserts that this confirms that Plaintiff's role was "land-based".

Plaintiff responds that the Chandris test does not require the 30 percent of time spent on the vessel to be "at sea"; it is a "status test" rather than a "voyage test." Chandris, 515 U.S. at 363, 369-70.  Here, Plaintiff asserts that he did not become

10

a land-based employee when the F/V ALLIANCE arrived in Cape May and he took on duties as a welder. Rather, he alleges, remained in the service of the vessel day and night, performing typical seaman activities, and engaging in a daily course of activities which exposed him to the typical perils of shipboard life. See supra at 7.

The same genuine disputes of material facts which the Court highlighted supra are present here: namely, (a) the nature and extent of Plaintiff's duties, and (b) whether the F/V ALLIANCE was a vessel "in navigation" at the time of Plaintiff's alleged injury. Viewed in the light most favorable to the Plaintiff, the finder of fact could draw the reasonable inference that Plaintiff had a substantial connection to the F/V ALLIANCE.

The Court finds that Defendant has not met its burden on the current record to establish that there is no genuine issue of material fact as to Plaintiff's seaman status. Consequently, Defendant is not entitled to judgment in its favor at this time.

   B. **Statutory Exclusive Remedy Provisions (Count IV)**

   1. The New Jersey Worker's Compensation Act

Defendant argues that Plaintiff's claim in Count IV is barred by an exclusive remedy provision of New Jersey's Worker's Compensation Act, N.J.S.A. § 34:15-8 (the "NJWCA").

As Plaintiff notes in his opposition brief, the late Judge Irenas already addressed this very issue in Morrow v. MarineMax,

11

Inc., 731 F. Supp. 2d 390 (D.N.J. 2010). In that case, Judge Irenas, in denying summary judgment, held that the Plaintiff could bring a claim for negligence under general maritime law, and that such a claim could not be barred by the NJWCA. Morrow, 731 F. Supp. 2d at 400. In that case, Plaintiff Morrow, a land-based employee, was covered by neither the Jones Act nor the Longshore and Harbor Workers' Compensation Act ("LHWCA"). Id. at 399. The Supreme Court had previously held in Chandris that such a worker could still recover "in admiralty, under general maritime tort principles." Id. (quoting Chandris, 515 U.S. at 356). Judge Irenas stated that if the NJWCA were applied, thus barring Plaintiff Morrow's claim, it "would 'deprive' Plaintiff of a 'substantial admiralty right[] as defined . . . by interpretive decisions of [the Supreme] Court." Id. (quoting Pope & Talbot v. Hawn, 346 U.S. 406, 410 (1953)).

Here, Plaintiff Woolery may ultimately be found by a finder of fact not to be a seaman, and thus not to be covered by the Jones Act. If so, as Chandris and Morrow dictate, he would still have the opportunity to recover "under general maritime tort principles."

2. The Longshore and Harbor Workers' Compensation Act

Defendant also argues that Plaintiff might be properly classified as a harbor worker, and, if so, would be covered by the LHWCA, which also contains an exclusivity provision, 33

12

U.S.C. § 905(a).  This provision bars claims for damages against an injured worker's employer.

Plaintiff responds that Defendant did not pay any compensation to Plaintiff under the LHWCA, and that the finder of fact may draw the reasonable inference that this failure to compensate constitutes "fail(ure) to secure payment of compensation as required" by the LHWCA.  Such a failure would preclude the exclusivity provision and allow Plaintiff to sue his employer.[2] See 33 U.S.C. § 905(a) (permitting employee to sue employer in admiralty if employer "fails to secure payment of compensation as required by this chapter").

While application of the LHWCA is a question of law, it turns on the material fact of whether Defendant secured payment of compensation to Plaintiff as required by the LHWCA.  Viewed in the light most favorable to the Plaintiff, the finder of fact could draw the reasonable inference that Plaintiff did not receive such compensation and thus is not subject to the LHWCA's exclusivity provision.

The Court finds that Defendant has not met its burden on the current record to establish that Plaintiff's claim in Count IV is barred by statute.  Consequently, Defendant is not entitled to judgment in its favor at this time.

---

[2] Defendant does not counter with an assertion of compensation under the LHWCA in its reply brief.

**IV. <u>CONCLUSION</u>**

For the reasons expressed above, Defendant's Motion for Summary Judgment will be **DENIED**. The case may proceed in due course. A corresponding Order shall issue on this date.


                                       ___<u>s/ Renée Marie Bumb</u>_____
                                       RENEE MARIE BUMB
                                       United States District Judge

Dated: <u>July 31, 2020</u>